ROGERS, Justice.
 

 The Life Insurance Company of Virginia sued to foreclose a mortgage against Joseph N. Nolan. The Louisiana National Bank, as a subsequent mortgage holder, intervened in the suit, and alleged that its mortgages primed plaintiff’s mortgage, because plaintiff’s mortgage had perempted for lack of rein
 
 *360
 
 scription within the prescribed time. The court below rendered a judgment in favor of intervener, and plaintiff has appealed.
 

 The facts are not disputed. On February 19, 1923, Joseph N. Nolan borrowed $20,000 from the Gulf Finance & Securities Company, and, in order to secure the loan and the interest thereon, granted in favor of the lender a mortgage on certain real property in the city' of Baton Rouge. The mortgage was filed for record on February 20,1923, and was recorded in mortgage book 97, folio 350, of the parish records.
 

 Subsequent to the execution of the mortgage, it was discovered that several of the interest notes executed by Nolan and described in the original instrument were incorrect, and by another notarial act executed on February 18,1924, the parties acknowledged the mortgage and made the necessary corrections therein. This act was filed for record on February 19, 1924, and recorded in mortgage book 113, folio 15, of the parish records.
 

 The mortgage was reinscribed on April 3, 1933, in mortgage book 248, folio 263, and, again, on October 30, 1933, in special mortgage book (provided for by Act No. 50 of 1924) No. 7, folio 499, of the parish records.
 

 Subsequent to the date of the execution by Joseph N. Nolan of the mortgage in favor of the Gulf Finance & Securities Company, Nolan granted four mortgages on the same and other property on the dates and for the amounts as follows, viz.: November 23, 1923; $13,700; November 13, 1926, $5,000; March 24, 1931, $3,000; and December 14, 1932, $1,-144.19. These mortgages and the notes scouted thereby became the property of the Louisiana National Bank, the intervener herein.
 

 The last principal note, which was for $12,-000, of the series of notes secured by the mortgage granted by Joseph N. Nolan in favor of the Gulf Finance & Securities Company became due on February 1, 1933, and was not paid at maturity; and this suit was filed on July 18, 1933, by the Life Insurance Company of Virginia, which had-acquired the mortgage and the notes secured thereby, to foreclose the mortgage for the nonpayment of that note and the accrued interest.
 

 Appellant contends that the judgment of the district court is erroneous for any one of the following reasons, viz.:
 

 First. The law of prescription in force at the time the suit was filed (Civ. Code, art. 3369, as amended and re-enacted by Act No. 50 oj! 1924) governs rather than the law which was in force at the time the mortgage was granted (Civ. Code, art. 3369, as amended and re-enacted by Act No. 227 of 1918).
 

 Second. In the alternative, should it be held that the Civ. Code, art. 3369, as amended and re-enacted by Act No. 227 of 1918, is controlling, then the reinscription was timely under the provisions of that statute.
 

 Third. Irrespective of whether Act No. 227 of 1918 or Act 50 of 1924 applies, the notarial act of acknowledgment and correction, filed February 19, 1924, constituted a. reinseription of the original mortgage, and the delays run from that date.
 

 We think that the reason lastly assigned by appellant is sound, and hence it will not be necessary to discuss the other two.
 

 
 *362
 
 The notarial act of acknowledgment or correction was executed hy the mortgagor and. mortgagee on February 18, 1924. It was filed in the clerk’s office the next day, and was -duly recorded in the parish records. The instrument is complete in itself. It designates the parties to the original act of mortgage; sets forth the date of the act and the name of the notary before whom it was executed. It recites the date of recordation, and specifies the book and folio in which the recordation was made. It fully describes the notes, both principal and interest, secured by the original mortgage, sets forth their amounts and their maturities, and gives a detailed description of the property mortgaged. In short, the inscription of the instrument sets out all the essentials ot the original mortgage as completely as if the mortgage itself had been re-inscribed.
 

 It was not necessary, as contended by appellee, that the original act of mortgage should have been recopied in its entirety in the mortgage records, since the act of acknowledgment and correction, which was recorded in full, contained all the substantial recitals of the original act of mortgage.
 

 The law on this point is concisely stated in the syllabus of Poutz v. Reggio, 25 La. Ann. 643, as follows, viz.: “It has never been held that, to make a valid inscription of a conventional mortgage, an entire copy of the authentic act in which it is granted should be spread upon the public record. The object of registration is public notice, with reasonable certainty, of the substantial particulars of the mortgage; and when this is done, the purpose of the law is satisfied.”
 

 The reinscription of the mortgage which was found to be valid in the cited ease was as follows, viz.: “Auguste Reggio, in favor of Edmond Reggio, as per act passed before Gilbert Leonard, then Parish Judge and ex-officio notary public in and for this parish, on the first day of April, 1844, to secure full and punctual payment of the sum of $14,899.79, being the share or portion accruing to said minor from the succession of Nicholas Reggio and Caroline Jorda, his deceased father and mother, specially mortgaged and hypothecated in favor of said minor.” (Then follows a description of the mortgaged property.) The mortgage, as shown hy the opinion of the court, was not a tutor’s mortgage, but was a' special mortgage granted and vendor’s lien reserved to secure the minor’s share of the purchase price of a certain plantation which was sold to effect a partition among the heirs.
 

 The declaration contained in article 3369 of the Civil Code to the effect that the registry of a mortgage ceases if the inscription has not been renewed in the manner in which it was first made was also contained in article 3333 of the Civil Code of 1825.
 

 In Shepherd v. Cotton Press, 2 La. Ann. 100, it was held under the provisions of article 3333, that: “Whatever be the form of the re-inscription, the description of the property mortgaged is one of its essential requisites, and was entirely omitted on that occasion. The reference to previous mortgages does not cure that defect.” And it was contended in the cited case of Poutz v. Reggio, that under the decision in Shepherd v. Cotton Press.a reinscription is invalid if the entire act in which the mortgage is contained is not copied in full. But it was held in Poutz v. Reggio
 
 *364
 
 that the contention was not sound, and that it was not necessary to recopy the entire act of mortgage in order to effect a valid reinscription of the instrument.
 

 On several occasions this court has decided it was not indispensable to the validity of the inscription that the entire act of mortgage should be copied in the mortgage records. Succession of Pate, 6 La. Ann. 241; Rogers v. Chandler, 6 La. Ann. 349, which were cited with approval in Poutz v. Reggio. Also, In re Prudhomme’s Estate, 35 La. Ann. 984, decided after the revision of the Civil Code in 1870, wherein it was said: “When a copy of those portions of the act bearing upon, and creating the mortgage, is inscribed, we must hold that the law is essentially complied with. .Such is manifestly the case here, and to destroy the effect of such an inscription would be to stultify the makers and the interpreters of the law.”
 

 If an exact copy of a mortgage is not essential for a valid inscription, certainly an exact copy of the instrument should not be required to effect a valid reinscription, provided that both the inscription and the reinscription in the mortgage records contain the substantial particulars of the instrument.
 

 In Hart v. Caffery, 39 La. Ann. 894, 2 So. 788, 789, it was claimed by the second mortgage creditor that the original mortgage was not properly reinscribed. But there the mortgagor had acknowledged the debt by an instrulnent which described the original mortgage, which instrument had been duly recorded. This court, in referring to that instrument, said: “The act [of acknowledgment] subserves all the purposes which a technical reinscription would have accomplished ; at least as concerns the first subsequent mortgage creditor.”
 

 In this case, the act of acknowledgment and correction, which was recorded on February 19, 1924, contained the substantial particulars of the original mortgage, which was recorded on February 20, 1923. The inscription in the' mortgage records of the act of acknowledgment and correction contained all that it was essential for the public to know. That inscription was notice to the world that the mortgagor continued to admit his indebtedness, and that the mortgagee continued to maintain its mortgage on the property described. The object of reinseribing mortgages is to dispense from searching for the evidence of their existence more than ten years hack. No one running the mortgage records back for that period could have failed to note the inscription of the act of acknowledgment and correction, and, having noted it, could have been misled to his injury by its terms. The spreading on the public records on February 19, 1924, of the entire act of mortgage would have given the public no fuller notice of its existence than did the recordation on that date of the notarial act of acknowledgment and correction.
 

 The appellee cites the following eases in support of its contention that the reinscription of a mortgage is not valid unless it consists of an exact copy of the original mortgage, viz.: Batey v. Woolfolk, 20 La. Ann. 385; Britton and Koontz v. Norment, 20 La. Ann. 508; Britton and Koontz v. Janney, 21 La. Ann. 204; Rochereau v. Dupasseur, 22 La. Ann. 402; Villavaso v. Walker, 28 La. Ann. 775; Watson v. Bondurant, 30 La. Ann. 1; Miltenberger v. Dubroca, 34 La. Ann. 313.
 

 
 *366
 
 We do not find anything in those cases that conflicts with the cases we have mentioned, which we think are controlling. There are some loose expressions contained in the cases cited by appellee, which are not pertinent here. An examination of the .cases reveals that, with the exception of Miltenberger v. Dubroca, there was nothing placed of record by the mortgage creditor within ten years of the execution of the original mortgage. In Miltenberger v. Dubroca, a judgment recognizing and enforcing a mortgage was recorded within the ten-year period, but the judgment was so defective that its recordation was not sufficient to constitute a reinscription of the mortgage. This clearly appears from the following description of the judgment set forth in the opinion of the court, viz.: “The judgment sufficiently describes the property, but fails to mention the name of the officer who passed the act, or the date of the act or of its original registry, or the name of the original mortgagee, or the total amount for which the mortgage was given. The judgment really contains nothing on its face to identify it with the particular mortgage, 'of which its regiSr try is claimed to operate as a reinscription, and leaves the reader under the necessity of looking outside of the record in order to ascertain all those facts, which should be patent on the face of the inscription.”
 

 The appellee also cites the Succession of Simon, 23 La. Ann. 533, and Adams & Co. v. Daunis, 29 La. Ann. 315; but neither of those cases has any bearing on the issue involved in this case. No question of the reinscription of a mortgage was involved in Succession of Simon. The issue before the court there was whether the recording of a certificate of a New Orleans notary in the mortgage records of St. Martin parish, certifying that the mortgage had been executed before him, was a sufficient inscription of the mortgage. The court held that it was not a compliance with the law, because no authentic copy of the mortgage had been presented to the recorder of mortgages for St. Martin parish, as required by article 3366 of the Civil Code. No one examining the records of St. Martin parish could have ascertained all the facts, since only a certificate of the mortgage had been filed in that parish; the original act being preserved among the notary’s records in the parish of Orleans. And no person is required to go outside the parish in which mortgaged property is located in order to ascertain the facts. Adams & Co. v. Daunis is authority only for the proposition that a mortgage when once foreclosed ceases to be an incumbrance on the property sold to satisfy the mortgage debt, and that no new mortgage can attach to the property except it be granted by the owner.
 

 The notarial act of acknowledgment and correction, amounting to a reinscription of the original mortgage, was inscribed in the mortgage records of East Baton Rouge parish on February 19, 1924, and as the suit to foreclose the mortgage was filed on July 18, 1933, it was well within the prescriptive period of ten years. The result of this is that the mortgage held by the plaintiff primes the mortgage held by the intervener.
 

 For the reasons assigned, the judgment herein appealed from is annulled so far as it decrees the mortgages held by the Louisiana National Bank, intervener, to be superior in rank to the mortgage held by plaintiff against the property described in plaintiff’s petition;
 
 *368
 
 and it is now ordered that plaintiff’s mortgage be, and it is hereby decreed to be, a first lien and privilege on the mortgaged property superior in rank to the mortgages held by the intervener, Louisiana National Bank; in all other respects the judgment is affirmed; the costs of its intervention are to be paid by the Louisiana National Bank.